UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

GEORGE M. CHAVIS,

                    Plaintiff,                          9:06-CV-0049
                                                        (LEK/GHL)
          v.

K. CURLEE, Prison Counselor, Great Meadow C.F.;
BEV CAMPBELL, Education Supervisor; Great
Meadow C.F.; F. YOUNG, Corrections Officer, Great
Meadow C.F.; J. JACKOWSKI, Hearing Officer,
Great Meadow C.F.; MR. ATKINSON, Program
Committee Director, Great Meadow C.F.; G. GREENE,
Superintendent, Great Meadow C.F.; MR. BEEBE,
Corrections Officer, Great Meadow C.F.; MR. McGUIRE,
Corrections Officer, Great Meadow C.F.; D. SELSKY,
SHU Disciplinary Director; TED NESMITH, Prison
Medical P.A., Great Meadow C.F.; J. JAI, Auburn C.F.;
WOLGZYK; Commissioner Hearing Officer; H.D.
GRAHAM, Superintendent, Auburn C.F.; and R. LAUX,
Auburn C.F.,



                    Defendants.

---

APPEARANCES:                              OF COUNSEL:

GEORGE M. CHAVIS, 91-A-3261
    Plaintiff, *Pro Se*
Clinton Correctional Facility
P.O. Box 2001
Dannemora, NY 12929

HON. ANDREW M. CUOMO                       ADELE M. TAYLOR-SCOTT, ESQ.
Attorney General for the State of New York  Assistant Attorney General
The Capitol
Albany, NY 12224

GEORGE H. LOWE, United States Magistrate Judge

## **REPORT-RECOMMENDATION**

This prisoner civil rights action, commenced *pro se* pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable Lawrence E. Kahn, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). Generally, Plaintiff's Amended Complaint alleges that, between July of 2005, and July of 2006, at Auburn C.F., and Great Meadow C.F., fourteen employees of the New York State Department of Correctional Services ("Defendants") violated his constitutional rights by retaliating against him or subjecting him to cruel and unusual prison conditions. (*See generally* Dkt. No. 6 [Plf.'s Am. Compl.].) Currently pending before the Court is Defendants' motion to dismiss Plaintiff's Amended Complaint on the ground that the action is barred by the "three strikes" rule established by 28 U.S.C. § 1915(g). (Dkt. No. 31.) For the reasons that follow, I recommend that Defendants' motion be granted or, in the alternative, that Plaintiff's Amended Complaint be *sua sponte* dismissed as a sanction pursuant to Fed. R. Civ. P. 11 for making a material misrepresentation to the Court in his sworn pleadings about his prior litigation history.

## I.      ANALYSIS OF DEFENDANTS' MOTION

### A.      Acquisition of "Three Strikes" Warranting Dismissal

Under the so-called "Three Strikes Rule" set forth in the federal statute governing *in forma pauperis* proceedings,

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is *frivolous, malicious, or fails to state a claim upon which relief may be granted,* unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g) [emphasis added]. Defendants are correct when they argue that the power of

a federal district court to invoke this rule is not limited to the outset of a litigation but extends all throughout the pendency of the proceeding.  (Dkt. No. 31, Part 13, at 2-3.)  In other words, a federal district court has the authority to rescind or revoke the *in forma pauperis* status that it has previously bestowed upon a plaintiff, if the court discovers that the status had been improvidently granted.[1]

The first thing we must do is determine the date when Plaintiff "brought" this action for purposes of 28 U.S.C. § 1915(g).  The Complaint in this action was signed by Plaintiff on September 12, 2005, postmarked on January 12, 2006, and received (and docketed) by the Clerk's Office on January 13, 2006.  (Dkt. No. 1.)  Ordinarily, under the "prison mailbox rule," the date of *filing* is deemed to be the date that the prisoner-plaintiff is presumed to have handed his complaint to a prison guard for *mailing*, which is the date that the complaint was *signed*.[2]  The problem here is that there appears to have been a four-month delay between the date of signing of the Complaint and the date of mailing (or post-marking) of the Complaint.  As a result, the question arises: was Plaintiff's Complaint "filed" on the date of signing (i.e., September 12, 2005) or on the date of mailing (i.e., January 12, 2006)?  Fortunately, the Court need not decide

---

[1]    *See, e.g., Eady v. Lappin*, 05-CV-0824, 2007 WL 1531879, at *1 & n.1 (N.D.N.Y. May 22, 2007) (Mordue, C.J., adopting Report-Recommendation by Lowe, M.J.); *Gill v. Pidlypchak*, 02-CV-1460, 2006 WL 3751340, at *5 (N.D.N.Y. Dec. 19, 2006) (Scullin, J.); *Polanco v. Burge*, 05-CV-0651, 2006 WL 2806574, at *2 (N.D.N.Y. Sept. 28, 2006) (Kahn, J., adopting Report-Recommendation by Homer, M.J.); *Demos v. John Doe*, 118 F. Supp.2d 172, 174 (D. Conn. 2000); *McFadden v. Parpan*, 16 F. Supp.2d 246, 247 (E.D.N.Y. 1998); *see also Rolle v. Garcia*, 04-CV-0312, Report-Recommendation (N.D.N.Y. Jan. 29, 2007) (Lowe, M.J.), *adopted on other grounds*, 04-CV-0312, 2007 WL 672679 (N.D.N.Y. Feb. 28, 2007) (Kahn, J.).

[2]    *See Shaw v. Superint., Attica Corr. Facility*, 03-CV-0610, 2007 WL 951459, at *3 n.3 (N.D.N.Y. March 28, 2007) (McCurn, J.) (habeas corpus proceeding) [citations omitted]; *Garraway v. Broome County, N.Y.*, 03-CV-0681, 2006 WL 931729, at *3-4 (N.D.N.Y. Apr. 7, 2006) (McAvoy, J.) (prisoner civil rights action) [citation omitted].

whether Plaintiff's action was "brought," for purposes of 28 U.S.C. § 1915(g)--on September 12, 2005, or on January 12, 2006--because an analysis under either finding would yield the same conclusion.

After carefully reviewing Plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service, I have determined that, as of September 12, 2005 (the earlier of the two aforementioned dates), he had acquired at least three "strikes" for purposes of 28 U.S.C. § 1915(g).

Plaintiff's "first strike" came in the case of *Chavis v. Charnes*, 99-CV-5072 (S.D.N.Y.). In *Charnes*, Plaintiff's *pro se* prisoner rights complaint was dismissed by the Southern District of New York *sua sponte*, on July 14, 1999. *See Chavis v. Charnes*, 99-CV-5072, Docket Sheet (S.D.N.Y.) (attached as Exhibit 1 to this Report-Recommendation). The Docket Sheet does not expressly state whether the dismissal was for frivolousness, maliciousness or merely failure to state a claim. *Id.* However, clearly the dismissal was for one of those three reasons since the Order of Dismissal expressly cited 28 U.S.C. § 1915 and was issued *sua sponte* immediately after filing. *Id.* The only authority under 28 U.S.C. § 1915 to issue such an order *sua sponte* immediately after filing is if the dismissal is frivolousness, maliciousness or failure to state a claim. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(a),(b). Furthermore, the Chief District Judge issuing the Order (Thomas P. Griesa) certified that any appeal from his Order of Dismissal would not be taken in good faith for purposes of 28 U.S.C. § 1915(a)(3). *See Chavis v. Charnes*, 99-CV-5072, Docket Sheet (S.D.N.Y.) (attached as Exhibit 1 to this Report-Recommendation). Such a certification, which occurs when a district judge finds the lack of an arguable basis in law or fact in the losing party's claims or arguments, indicates a finding of frivolousness with regard

to Plaintiff's claims.[3]  Thus, there was clearly at least one "strike" for purposes of 28 U.S.C. §

1915(g) before he "brought" this action on September 12, 2005.

Plaintiff's "second strike" came during his appeal from the aforementioned order of

dismissal.  Despite Chief Judge Griesa's certification that any appeal from his Order of Dismissal

would not be taken in good faith for purposes of 28 U.S.C. § 1915(a)(3), Plaintiff took an appeal

anyway, on August 12, 1999.  *See Chavis v. Charnes*, 99-CV-5072, Docket Sheet (S.D.N.Y.)

(attached as Exhibit 1 to this Report-Recommendation).  The appeal, which was to the Second

Circuit, was assigned docket number 99-265.  *Id*; *see also Chavis v. Charnes*, No. 99-265,

Docket Sheet (2d Cir.) (attached as Exhibit 2 to this Report-Recommendation).  On February 25,

2000, the Second Circuit issued an Order denying Plaintiff's request to proceed *in forma pauperis*

during the appeal, and dismissed Plaintiff's appeal.  (*Id.*)  Although the copy of the Order of

Dismissal is not available on-line, the Second Circuit Docket Sheet expressly quotes the Order.

*See Chavis v. Charnes*, No. 99-265, Docket Sheet (2d Cir.) (attached as Exhibit 2 to this Report-

Recommendation).  According to the Docket Sheet, the Order stated:

---

[3]      *See Coppedge v. United States*, 369 U.S. 438, 445 (1962) ("We consider a [losing
party's] good faith . . . demonstrated when he seeks appellate review of any issue not frivolous.
In so doing, we note that if in forma pauperis litigation is attempted for reasons that may
genuinely be characterized as the litigant's 'bad faith,' express authority exists in 28 U.S.C.
1915(d) for dismissal of the cause as frivolous."); *accord, Pytel v. U.S.*, 378 F. Supp. 294, 296-97
(N.D.N.Y. 1974) (MacMahon, J.) ("This Court will not authorize an appeal *in forma pauperis*
under 28 U.S.C. § 1915(a) and hereby certifies that any appeal is not taken in good faith.  In this
context, good faith is judged by an objective standard, and where, as here, an appeal would be
frivolous, it is not taken in good faith.") [citations omitted]; *S.E.C. v. Broadwell Securities, Inc.*,
64-CV-3995, 1981 WL 1655, at *1 (S.D.N.Y. July 8, 1981) ("An appeal may not be taken in
forma pauperis if the trial court certifies in writing that it is not taken in good faith.  28 U.S.C. §
1915.  Good faith, in this context, is an objective standard that measures whether the issues on
appeal are frivolous.") [internal quotation marks and citations omitted].

> Motions having been made by appellant pro se for in forma pauperis status and for damages, upon due consideration it is ordered that said motions be and hereby are denied, and the appeal is dismissed as frivolous. See 28 U.S.C. 1915(e); Neitzke v. Williams, 490 U.S. 319, 325 (1989).

(*Id.*)[4] I can find no record of any appeal pending (or having been actually filed) with the

Supreme Court. Thus, there was clearly a "second strike" for purposes of 28 U.S.C. § 1915(g)

before Plaintiff "brought" this action on September 12, 2005. I note that a second strike may

result from the dismissal of a federal appeal, even though the appellant had already incurred a

strike during the dismissal of the federal district court action underlying the appeal.[5]

Plaintiff's "third strike" came in the case of *Chavis v. Streubel*, No. 04-2814 (2d Cir.). In

*Streubel*, Plaintiff's *pro se* prisoner rights complaint was dismissed by the Western District of

New York on March 29, 2004, for failure to state claim *and* failure to adduce evidence pursuant

to Fed. R. Civ. P. 56. *Chavis v. Struebel*, 317 F. Supp.2d 232, 236-39 (W.D.N.Y. March 29,

---

[4]     I note that this express finding of "frivolousness" is also reflected in the district court docket sheet's identification of the Second Circuit's Order of Dismissal. *See Chavis v. Charnes*, 99-CV-5072, Docket Sheet (S.D.N.Y.) (attached as Exhibit 1 to this Report-Recommendation).

[5]     *See Cait v. Beto I Unit*, 04-CV-40848, 126 Fed. App'x 645, 646 (5th Cir. Feb. 23, 2005) ("The magistrate judge's dismissal of Cain's complaint as frivolous and for failure to state a claim and our dismissal of Cain's appeal both count as strikes for purposes of 28 U.S.C. § 1915(g)."); *Smith v. Bruce*, No. 04-3043, 103 Fed. App'x 324, 344 (10th Cir. June 29, 2004) ("Dismissal of Smith's appeal as frivolous counts as a strike against him, as does the district court's dismissal of his complaint.") [citations omitted]; *Hains v. Washington*, 131 F.3d 1248, 1250 (7th Cir. 1997) ("A frivolous complaint (or as in this case a complaint that is dismissed under § 1915A for failure to state a claim) followed by a frivolous appeal leads to two 'strikes' under 28 U.S.C. § 1915(g)."); *cf. Bea v. Doe*, 401 F. Supp.2d 538, 540 & n.5 (E.D. Va. 2005) (because district court proceeding and appellate proceeding arising out of district court proceedings were "distinct" for purposes of PLRA's "three strikes" rule, the plaintiff's voluntary withdrawal of his appeal did not effect the fact that the dismissal of the district court action constituted a "strike").

2004). As a result, no strike resulted from that dismissal. However, during the dismissal, the

United States Magistrate Judge (assignment to whom the parties had consented) certified that any

appeal from his order of dismissal would not be taken in good faith, for purposes of 28 U.S.C. §

1915(a)(3). *Struebel*, 317 F. Supp.2d at 239. Plaintiff took an appeal anyway. On June 2, 2005,

the Second Circuit dismissed the appeal because it "lack[ed] an arguable basis in law or fact"

pursuant to 28 U.S.C. § 1915(e)(2)(B)(1), expressly citing that statute and *Neitzke v. Williams*,

490 U.S. 319, 325 (1989). *Chavis v. Struebel*, No. 04-2814, Mandate (2d Cir. filed March 11,

2005) (attached as Exhibit 3 to this Report-Recommendation). *Neitzke v. Williams*, and its

progeny, explain that use of such language is an unequivocal finding of frivolousness for

purposes of 28 U.S.C. § 1915.[6] I can find no record of any appeal pending (or having been filed)

with the Supreme Court. Thus, there was clearly a "third strike" for purposes of 28 U.S.C. §

1915(g) before he "brought" this action on September 12, 2005.

Even if one of the above dismissals did not constitute a "strike" for some reason, Plaintiff

incurred yet another strike before he filed the current action. Plaintiff's "fourth strike" came in

the case of *Chavis v. New York*, UID 2001-013-019 (N.Y. Ct. Cl.). In *Chavis v. New York*,

Plaintiff, as a prisoner proceeding *pro se*, filed a claim against New York State for the "loss of

travel expenses [incurred] by [his] family members" as a result of "false information given them

over the phone by [his] vindictive SHU-Counselor" regarding the authorized time during which

---

[6]      *See Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[A]n appeal on a matter of
law is frivolous where none of the legal points are arguable on their merits. . . . By logical
extension, a complaint, containing as it does both factual allegations and legal conclusions, is
frivolous where it lacks an arguable basis either in law or fact.") [internal quotation marks and
citation omitted]; *Tavarez v. Reno*, 54 F.3d 109, 109 (2d Cir. 1995) ("An appeal is frivolous
where it lacks an arguable basis in law or fact.") (citing *Neitzke v. Williams*, 490 U.S. 319, 325
[1989]).

they could visit Plaintiff at Lakeview Prison. *Chavis v. New York*, UID 2001-013-019, Decision

(N.Y. Ct. Cl. filed Sept. 19, 2001) (Patti, J.) (attached as Exhibit 4 to this Report-

Recommendation). The defendant moved to dismiss on the ground that the claim was

inappropriately brought in that (1) Plaintiff was not the one who incurred the property loss and

(2) he was not authorized to represent them in court (as a practicing attorney). *Id.* The Court of

Claims judge assigned to the case, Judge Philip J. Patti, agreed with defendant and dismissed

Plaintiff's claim on September 19, 2001. *Id.* Notably missing from the decision is any mention

of evidence. This is because the decision was based solely on the allegations of Plaintiff's

complaint. As a result, the dismissal was much like one for failure to state a claim upon which

relief may be granted under Fed. R. Civ. P. 12(b)(6).[7] I can find no record of any appeal from

---

[7]      I note that, even if the dismissal of Plaintiff's claim in *Chavis v. New York* was not
simply caused by a failure to state a claim but was also caused partially by a lack of standing,
case law exist holding that such a dismissal would still constitute a "strike" for purposes of 28
U.S.C. § 1915(g). *See Jones v. Edgar*, 3 F. Supp.2d 979, 981-82 (C.D. Ill. 1998) (dismissal of
prisoner's claim relating to alleged Fifteenth Amendment violation for failure to state claim,
coupled with dismissal of prisoner's judicial-voting-districts claim for lack of standing, counted
as a "strike" for purposes of PLRA), cited with approval in *Eady v. Lappin*, 05-CV-0824, 2007
WL 1531879, at *2, n.4 (N.D.N.Y. May 22, 2007) (Mordue, C.J., adopting Report-
Recommendation by Lowe, M.J.) [collecting cases]; *cf. Comeaux v. Cockrell*, 72 F. App'x 54, 55
(5th Cir. 2003) ("The district court could dismiss part of [the plaintiff's] complaint as malicious,
which counted as a strike under 28 U.S.C. § 1915(g), even though the case was ultimately
dismissed for failure to comply with court orders."); *Cross v. Harris*, 06-CV-0236, 2006 WL
3834270, at *3 & n.1 (E.D. Ark. Dec. 29, 2006) (counting as a strike a prior partial dismissal on
ground of frivolousness, even though rest of action was dismissed for failure to exhaust
administrative remedies); *President v. Duplichan*, 05-CV-1178, 2006 WL 2540362, at *5 (W.D.
La. June 14, 2006) (considering fact that "Plaintiff has had at least three previous civil actions
filed in this Court dismissed in whole *or in part* as frivolous, malicious, or for failing to state a
claim" in determining whether he had acquired "three strikes" pursuant to Section 1915[g])
[emphasis added]; *Townsend v. Walker*, 06-CV-0361, 2006 U.S. Dist. LEXIS 37723, at *3-4
(S.D. Ill. June 8, 2006) (rejecting plaintiff's argument that "[b]ecause [his] entire case was not
dismissed for failure to state a claim, . . . the . . . [partial dismissal] should not count as a
strike."); *Shaw v. Weaks*, 06-CV-2024, 2006 WL 1049307, at *6 n.13 (W.D. Tenn. Apr. 20,
2006) (counting as a strike a prior partial dismissal on ground of frivolousness or failure to state

this decision anywhere pending (or having been filed).  Thus, there appears to have been a

"fourth strike" for purposes of 28 U.S.C. § 1915(g) before he "brought" this action on September

12, 2005.

Having said all of this, I note that, for the most part, I am not persuaded by Defendants'

argument that various of Plaintiff's actions or appeals resulted in "strikes" for purposes of 28

U.S.C. § 1915(g).  (Dkt. No. 31, Part 13, at 4-5.)  Generally, either the particular dismissals cited

by Defendants occurred after the "bringing" of Plaintiff's action (on September 12, 2005, or

perhaps January 12, 2006), or those dismissals simply did not occur on the ground that the action

was "frivolous, malicious, or fails to state a claim" under 28 U.S.C. § 1915(g).  I note that I do

not read 42 U.S.C. § 1915(g), or the cases applying it, as suggesting that a dismissal solely

because of discovery abuses pursuant to Fed. R. Civ. P. 37, or a failure to serve pursuant to Fed.

R. Civ. P. 41, constitutes a dismissal for frivolousness, maliciousness or failure to state a claim.[8]

Failures during discovery and failures to serve are failures based on something other than the four

corners of a plaintiff's complaint–which is essentially the only thing looked at when determining

frivolousness, maliciousness and failure to state a claim.  Finally, I read 42 U.S.C. § 1915(g) as

not encompassing a dismissal that is based partially upon the absence of genuine issues of

_____

claim, even though rest of action was dismissed for failure to exhaust administrative remedies);
*Clemons v. Young*, 240 F. Supp.2d 639, 640-641 (E.D. Mich. 2003) (ruling that "a complaint
dismissed in part as frivolous and in part without prejudice because of the failure to exhaust
administrative remedies is . . . a 'strike' for purposes of 28 U.S.C. § 1915(g)").

[8]       *See, e.g.,* Marjorie A. Shields, "Validity and Construction of 'Three Strikes' Rule
Under 28 U.S.C.A. § 1915(g) Barring Prisoners from In Pauperis Filing of Civil Suit After Three
Dismissals for Frivolity," 168 A.L.R. Fed. 433, §§ III.5. III.6 (2001 & Cumulative Supplement)
(discussing cases addressing what constitutes a "frivolous" or "malicious" action for purposes of
28 U.S.C.A. § 1915[g]).

material fact determined after a review of record evidence pursuant to Fed. R. Civ. P. 56.  Apart from the fact that 28 U.S.C. § 1915(g), which is very specific, does not speak of such dismissals, such a review of record evidence generally only occurs when a litigant has survived any argument that his claim is frivolous, malicious or fails to state a claim.

For all of these reasons, I find that Plaintiff had earned at least three "strikes" for purposes of 28 U.S.C. § 1915(g) before he "brought" this action on September 12, 2005.  However, that does not end our inquiry, because the "Three Strikes Rule" contains an exception for prisoners who are "in imminent danger of serious physical injury" when they bring their action.  28 U.S.C. § 1915(g).

### B.     Non-Applicability of Imminent Danger Exception

As stated earlier, the "Three Strikes Rule," set forth in the federal statute governing *in forma pauperis* proceedings, reads,

> *In no event shall a prisoner bring a civil action* or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, *unless the prisoner is under imminent danger of serious physical injury*.

28 U.S.C. § 1915(g) [emphasis added].

Because 28 U.S.C. § 1915(g) creates an exception for prisoners who are under imminent danger of serious physical injury when they "bring a civil action," the imminent-danger exception applies only when such danger exists *at the time the action is brought*.  *See Malik v. McGinnis*, 293 F.3d 559, 562-63 (2d Cir. 2002).  As the Second Circuit explained in *Malik*,

10

> We agree with our sister circuits that § 1915(g) allows
> prisoners to escape the three strikes rule only if "the prisoner *is* under
> imminent danger of serious physical injury." (emphasis added).
> Because § 1915(g) uses the present tense in setting forth the imminent
> danger exception, it is clear from the face of the statute that the danger
> must exist at the time the complaint is filed. Further, "[b]y using the
> term 'imminent,' Congress indicated that it wanted to include a safety
> valve for the 'three strikes' rule to prevent impending harms, not those
> harms that had already occurred." *Abdul-Akbar* [v. *McKelvie*], 239
> F.3d [307] at 315 [3d Cir. 2001]. Accordingly, the language of §
> 1915(g) makes clear that the "imminent danger" exception only applies
> to danger existing at the time the complaint is filed.

*Malik v. McGinnis*, 293 F.3d 559, 562-63 (2d Cir. 2002), *accord, Polanco v. Hopkins*, No. 07-1739, 2007 WL 4258724, at *2-3 (2d Cir. Dec. 6, 2007) (declining to overturn the Second Circuit's time-of-filing interpretation set forth in *Malik*).

As a result, as in the Court's analysis of the assessment-of-strikes issue, the first thing the Court must do when analyzing the imminent-danger issue is to determine the date when Plaintiff "brought" this action for purposes of 28 U.S.C. § 1915(g). As explained above in Part I.A. of this Report-Recommendation, because of the "prison mailbox rule," an issue exists regarding precisely when Plaintiff "brought" this action for purposes of 28 U.S.C. § 1915(g). He signed his original Complaint on September 12, 2005. However, he apparently did not mail that Complaint until on January 12, 2006. What further complicates matters is the fact that Plaintiff signed what he characterized as an "Amended" Complaint in this action on July 24, 2006. (Dkt. No. 6.) Ordinarily, this fact would not present a real problem, since an amended complaint contains allegations arising out of the same events as the events giving rise to the allegations contained in the original complaint. However, here, the "Amended" Complaint was, in actuality, an Amended and *Supplemental* Complaint, asserting, for the first time, allegations arising out of events

11

occurring *after* the date he originally "brought" the action, specifically events occurring between May and July of 2006, at Auburn C.F.  (*Compare* Dkt. No. 1 *with* Dkt. No. 6.)  As a result, a sort of paradox arises: If a court considers the new allegations presented in a plaintiff's supplemental complaint when resolving the imminent-danger issue (presented by 28 U.S.C. § 1915[g]), the court will be determining whether the plaintiff was in imminent danger *after*, not before, he brought the action--unless the court re-characterizes the date on which the action was "brought" to coincide with the filing of the supplemental complaint.

Fortunately, again, the Court need not resolve this issue because the Court would reach the same conclusion about the applicability of the imminent-danger exception regardless of whether the Court assumed Plaintiff "brought" this action on July 24, 2006, on January 12, 2006, or on September 12, 2005.  This is because Plaintiff has not, in either his original Complaint or his Amended Complaint, alleged facts plausibly suggesting that he was under imminent danger of serious physical injury on any of the referenced dates.[9]

---

[9]       I note that, when determining whether a prisoner has qualified for the "imminent danger" exception, courts look at the non-conclusory allegations in the plaintiff's complaint. *Welch v. Fisher*, 07-CV-0929, 2007 WL 3231992, at *1-2 (N.D.N.Y. Oct. 30, 2007) (McAvoy, J.) (concluding that plaintiff had failed to allege imminent danger of serious physical injury) [citations omitted]; *see also Abdrews v. Cervantes*, 493 F.3d 1047, 1053 (9th Cir. 2007) ("[A]ll [circuits] maintain a singular focus on the facts alleged in the complaint in deciding whether a prisoner faced the requisite harm.") [collecting cases]; *Ibrahim v. Dist. of Columbia*, 463 F.3d 3, 6 (D.C. Cir. 2006) ("In determining whether he qualifies [for the 'imminent danger' exception], we look to the complaint . . . ."); *Brown v. Johnson*, 387 F.3d 1344, 1350 (11th Cir. 2004) ( "[T]he issue [under § 1915(g)] is whether his complaint, as a whole, alleges imminent danger of serious physical injury."); *Ciarpaglini v. Saini*, 352 F.3d 328, 330 (7th Cir. 2003) ("Before denying leave to proceed IFP, courts must review a frequent filer's well-pled allegations to ensure that the prisoner is not in imminent danger.") [citation omitted]; *Rivera v. Allin*, 144 F.3d 719, 726 (11th Cir. 1998) ("Prior to denying leave to proceed IFP, courts must review a frequent filer prisoner's well-pled allegations to ensure that the prisoner is not under imminent danger of serious physical injury.") [internal quotation marks and citation omitted], *abrogated on other grounds*, *Jones v. Block*, 127 S. Ct. 910 (2007).

For example, liberally construed, Plaintiff's Amended Complaint (signed on July 24, 2006) alleges that, between July of 2005, and July of 2006, at Auburn C.F., and Great Meadow C.F., the fourteen Defendants in this action violated his constitutional rights in the following ways:

(1) **Defendant Curlee** (a) filed false disciplinary charges against Plaintiff on July 7, 2005, in retaliation for his providing her with written notice that he intended to take legal action against her, at Auburn C.F., and (b) intentionally ignored Plaintiff's "mandatory program" request on or about July 11, 2005, at Auburn C.F.;

(2) **Defendant Young** denied Plaintiff a legal assistant prior to his disciplinary hearing on the referenced July 7, 2005, disciplinary charges, at Great Meadow C.F.;

(3) **Defendant Jackowski** (a) also denied Plaintiff a legal assistant prior to his disciplinary hearing on the referenced July 7, 2005, disciplinary charges, at Great Meadow C.F., (b) wrongfully convicted Plaintiff of the referenced charges, and excessively sentenced him to nine months' confinement in the Great Meadow C.F. SHU, and (c) Defendant Jackowski also excessively punished Plaintiff to six months' confinement in the Great Meadow C.F. SHU following another wrongful conviction of false and retaliatory charges filed by Defendant Curlee in July of 2005;

(4) **Defendant Selsky** failed to completely reverse these disciplinary convictions, in September or October of 2005;

(5) **Defendant Green** intentionally ordered wrongful disciplinary hearings against Plaintiff on false disciplinary charges in July and August of 2005, at Great Meadow C.F.;

(6) **Defendant Campbell** (a) filed false disciplinary charges against Plaintiff in July of

2005, in retaliation for his providing her with written notice that he intended to take legal action against her, at Great Meadow C.F., and (b) intentionally ignored Plaintiff's "mandatory program" request five or six months before his Parole Board interview in 2005, at Great Meadow C.F., resulting in his denial of release to parole;

(7) **Defendant Atkinson** wrongfully and intentionally denied Plaintiff's "mandatory program" requests between February and August of 2005, at Great Meadow C.F., resulting in his denial of release to parole;

(8) **Defendant Beebe**, in retaliation against Plaintiff for having provided Defendant Curlee with written notice that he intended to take legal action against her, at Auburn C.F., (a) wrongfully and intentionally inhibited Plaintiff's practice of the Islamic religion by denying him "all religious materials including [his] study lessons" between July and August of 2005, at Great Meadow C.F., (b) wrongfully and intentionally denied Plaintiff his legal work, which was inside his "property bags," at Great Meadow C.F., and (c) wrongfully and intentionally placed him in a Great Meadow C.F. SHU cell that was "dirty, grimy and unsanitized" for a month prior to his transfer to another prison;

(9) **Defendant McGuire** either committed the same violations as did Defendant Beebe during the same time period at Great Meadow C.F., or he helped Defendant Beebe commit those violations;

(10) **Defendant Nesmith** callously (a) denied Plaintiff Benadryl over-the-counter allergy medication on "numerous dates" between June of 2005 and August 8, 2005, even though Plaintiff had had an outbreak of hives during that time period, at Great Meadow C.F., which had caused "eye and facial swelling," and (b) visited Plaintiff's cell without actually performing a sick call on

14

several dates during the referenced time period;

(11) **Defendant Laux** denied Plaintiff "all multi-vitamin, Vitamin C and E supplements"
on May 23, 2006, without first giving him a personal examination, despite knowing that he
suffered from a Hepatitis-B condition, at Auburn C.F.;

(12) **Defendant Hai** filed false disciplinary charges against Plaintiff on June 13, 2006,
and June 14, 2006, in retaliation for the grievances that he had filed against Defendant Hai on
June 2, 2006, and June 13, 2006, at Auburn C.F.;

(13) **Defendant Wolgzyk** (a) intentionally denied Plaintiff a legal assistant prior to his
disciplinary hearings on June 19, 2006, and June 20, 2006, at Auburn C.F., (b) wrongfully
convicted him of the charges against him at those hearings, at Auburn C.F., and (c) callously
sentenced him to incarceration in the Auburn C.F. SHU; and

(14) **Defendant Graham** caused Plaintiff to be incarcerated in an Auburn C.F. SHU cell
that was dirty and flooded, and where he was deprived of running water, cleaning supplies,
personal hygiene items, and his legal papers, in June and July of 2006. (*See generally* Dkt. No.
6.)

I find that these alleged facts do not plausibly suggest that Plaintiff was under an
*imminent danger of serious physical injury* when he brought this action. (Indeed, I would have
difficulty finding that these allegations plausibly suggest any *deliberate indifference to a serious
medical need*.) The closest Plaintiff comes to asserting such factual allegations is when he
alleges that (1) Defendant Nesmith denied Plaintiff Benadryl over-the-counter allergy medication
on "numerous dates" *between June of 2005 and August 8, 2005*, even though Plaintiff had had an
outbreak of hives during that time period at Great Meadow C.F., which had caused "eye and

15

facial swelling," and (2) Defendant Laux denied Plaintiff "all multi-vitamin, Vitamin C and E

supplements" *on May 23, 2006*, without first giving him a personal examination, despite

knowing that he suffered from a Hepatitis-B condition, at Auburn C.F.

　　The first problem with these allegations is they do not plausibly suggest that the injuries

Defendants Nesmith and Laux caused Plaintiff *between June of 2005 and August 8, 2005*, and *on*

*May 23, 2006*, somehow continued to cause Plaintiff adverse health consequences *at the time this*

*action was "brought"*–whether that date was when Plaintiff dated his original Complaint, on

*September 12, 2005*, or when that original Complaint was postmarked, on *January 12, 2006*, or

when Plaintiff signed his "Amended" Complaint in this action, *on July 24, 2006*.

　　The Second Circuit recently affirmed a district court's finding of no-imminent-danger

under circumstances involving an analogous temporal disconnect. *See Polanco v. Hopkins*, No.

07-1739, 2007 WL 4258724 (2d Cir. Dec. 6, 2007). In *Polanco v. Hopkins*, the plaintiff alleged

that (1) defendants were effectively forcing him to breathe "black mold" in a prison shower,

exacerbating both his AIDS condition and his Hepatitis-B condition, and (2) defendants had

deprived him of hygienic items and a proper diet while in the prison SHU, causing him to lose

weight. *Polanco v. Hopkins*, 03-CV-6661, 2007 WL 914023, at *3-5 (W.D.N.Y. March 23,

2007). With respect to the first claim (regarding the moldy shower), the Western District of New

York ruled that the plaintiff had not alleged facts plausibly suggesting that he was in imminent

danger of serious physical injury *at the time be "brought" the action*, because he filed the action

on December 29, 2003 (while he was incarcerated at Auburn C.F.) long after he had been

subjected to the moldy shower on October 10, 2002 (while he was incarcerated at Elmira C.F.).

*Polanco*, 2007 WL 914023, at *3-4. With respect to the second claim (regarding his proper

hygiene and diet while in SHU), the Western District ruled there was no "imminent danger"

alleged due to a similar temporal disconnect between the date of the injury (on March 25-27,

2003) and the date of the filing (on December 29, 2003). *Id.* at *5 & n.1. On appeal, the Second

Circuit agreed, affirming the Western District's ruling. *See Polanco v. Hopkins*, No. 07-1739,

2007 WL 4258724, at *2 (2d Cir. Dec. 6, 2007) ("Nor did the District Court err in determining

that Polanco's 'allegations cannot support a determination that he was in imminent danger' of

serious physical injury with respect to his claims relating to the health risks associated with his

exposure to mold or to his claim of unjust discipline.'").

     In any event, even if this temporal disconnect did not plague Plaintiff's allegations, his

allegations would still not plausibly suggest "imminent danger" because they lack several critical

details.  For example, with respect to his Benadryl claim, Plaintiff alleges no physical injury

greater than "eye and facial swelling."  Nor does Plaintiff allege how many times Defendant

Nesmith deprived him of the Benadryl–a number closer to four or forty?  With respect to his

vitamin claim, Plaintiff alleges no specific physical injury *at all*.  How did Defendant Laux's

alleged vitamin deprivation on one day exacerbate Plaintiff's pre-existing Hepatitis-B condition?

And how did any such exacerbated condition rise to the level of an *imminent danger of serious*

*physical injury*?

     Analogous circuit court decisions exist finding that a prisoner had not alleged such an

imminent danger due to his failure to provide such critical details.  *See, e.g., Skillern v. Paul*, 06-

CV-11440, 202 Fed. App'x 343, 344 (11th Cir. Oct. 4, 2006) (prisoner was not in imminent

danger of serious physical injury for purposes of 28 U.S.C. § 1915[g], where he alleged merely

that the deprivation of his heart medication "may result" in his suffering serious physical injury,

without "present[ing] any description of the condition giving rise to the prescription for heart

disease medication," and without "alleg[ing] that he suffered any physical injury as a result of not

receiving the medication"); *White v. Colorado*, 157 F.3d 1226, 1231-32 (10th Cir. 1998) (prisoner

was not in imminent danger of serious physical injury for purposes of 28 U.S.C. § 1915[g],

where he merely alleged "vague and utterly conclusory assertions" of withheld medical treatment,

specifically, that he "ha[s] been deprived of life sustaining medication and medical

attention/treatment, ha[s] been beaten, and/or otherwise tortured and allowed to suffer great pain,

so that [his] health degenerated to a[n] extremely life threatening degree").[10]

Finally, I note that Plaintiff, in an obvious attempt to respond to Defendants' imminent-

danger argument, has asserted some allegations of physical injury in his Opposition

Memorandum of Law (described below).  As an initial matter, I find that only the allegations of a

prisoner's *pleading* (not a memorandum of law) should be considered in deciding whether such

imminent danger existed at the time an action was brought, for the reasons discussed above.[11]  In

any event, these allegations asserted in Plaintiff's Opposition Memorandum of Law are, like the

allegations asserted in his pleadings, wholly conclusory.  (*See* Dkt. No. 33, Plf.'s Opp. Mem. of

Law, at 4, 26 [alleging that an excessive use of force, by unidentified Defendants on unidentified

dates, caused Plaintiff to experience "internal organ trauma with bleeding-swelling to head and

body with lacerations"]; Dkt. No. 33, Plf.'s Opp. Mem. of Law, at 20 [alleging that Defendant

---

[10]     *See also Martin v. Shelton*, 319 F.3d 1048, 1050 (8th Cir. 2003) (prisoner was not
in imminent danger of serious physical injury for purposes of 28 U.S.C. § 1915[g], where he
merely asserted conclusory allegations that prison officials were trying to kill him by forcing him
to work in extreme weather conditions despite "his blood pressure condition").

[11]     *See, supra*, note 9 of this Report-Recommendation.

18

Laux caused "a deterioration of Plaintiff's physical condition]; Dkt. No. 33, Plf.'s Opp. Mem. of Law, at 21-22 [alleging that, on July 17, 2006, unidentified correctional officers, physically assaulted Plaintiff]; Dkt. No. 33, Plf.'s Opp. Mem. of Law, at 25 [alleging that, during an unspecified time, unspecified Defendants denied Plaintiff "emergency medical treatment for 2 ½ weeks"].)

For these reasons, I find that Plaintiff has not alleged facts plausibly suggesting that he was under imminent danger of serious physical injury when he brought this action. As a result, I recommend that Plaintiff's *in forma pauperis* status be revoked or rescinded as having been improvidently granted, and that Plaintiff be given ten (10) days from the date of the Court's final order with regard to Defendants' motion by which to pay the Court's filing fee of $250 (the fee applicable at the time of filing), upon penalty of dismissal.

Finally, I note that I specifically reject Plaintiff's argument that the Court is somehow estopped from revoking or rescinding his *in forma pauperis* status because it granted that status on July 5, 2006. (Dkt. No. 33, at 24-25 [Plf.'s Opp. Mem. of Law].) It is true that, in my Report-Recommendation of July 5, 2006, I noted, in a footnote, that Plaintiff had filed five other actions in the Northern District. (Dkt. No. 5, at 2.) However, before so noting, I had no occasion to look outside of the Northern District of New York for other cases filed by, or "strikes" earned by, Plaintiff. Simply stated, I was relying on Plaintiff's misrepresentation, in his sworn Complaint, about his litigation history. (*See*, *infra*, Part II of this Report-Recommendation [describing Plaintiff's misrepresentation].) Having misled the Court about his previous litigation history, Plaintiff cannot be heard to complain about the Court's reconsideration of his entitlement to proceed *in forma pauperis*.

## II.   ALTERNATIVE GROUND FOR DISMISSAL

In the alternative, I find that Plaintiff should be sanctioned for making a material misrepresentation to the Court, in both his sworn Complaint and his sworn Amended Complaint, about his previous litigation history.

Specifically, in Paragraph 5 of Plaintiff's sworn Complaint, he answered "Yes" to the question, "Have you filed other lawsuits in state or federal court otherwise relating to your imprisonment?" (Dkt. No. 1, ¶ 5[a] [Plf.'s Compl.].) He then listed only *one* case when identifying those cases, even though he was specifically instructed, "If your answer to 5(a) is YES you must describe any and all lawsuits, currently pending or closed, in the space provided on the next page." (Dkt. No. 1, ¶ 5[b] [Plf.'s Compl.].) Paragraph 5 of Plaintiff's sworn Amended Complaint contains the exact same question and answer. (*See* Dkt. No. 6, ¶ 5 [Plf.'s Am. Compl.].)

The problem is that, in answering this question, Plaintiff failed to disclose to the Court *any* of the *fourteen* state and federal court actions relating to his imprisonment that he had filed before the date on which he signed his original Complaint, on September 12, 2005, and/or before the date on which he signed his Amended Complaint, on July 24, 2006. *See Chavis v. Charnes,* 99-CV-5070 (S.D.N.Y.) (filed 7/14/99); *Chavis v. Cunningham,* 00-CV-0097 (W.D.N.Y.) (filed 1/28/00); *Chavis v. Flagler,* 01-CV-0510 (W.D.N.Y.) (filed 7/19/01); *Chavis v. VonHagan,* 02-CV-0119 (W.D.N.Y.) (filed 2/11/02); *Chavis v. Zodlow,* 02-CV-0637 (N.D.N.Y.) (filed 5/9/02); *Chavis v. Kienert,* 03-CV-0039 (N.D.N.Y) (filed 1/9/03); *Chavis v. Ferris,* 03-CV-0743 (W.D.N.Y.) (filed 10/2/03); *Chavis v. Bennett,* 03-CV-0755 (N.D.N.Y.) (filed 6/18/03); *Chavis v. D.N.,* 04-CV-0158 (N.D.N.Y.) (filed 2/12/04); *Chavis v. Woods,* 05-CV-0429 (S.D.N.Y.)

(filed 1/14/05); *Chavis v. Woods*, 05-CV-0768 (E.D.N.Y.) (filed 2/9/05); *Chavis v. Goord*, 777

N.Y.S.2d 918 (N.Y. App. Div., 3d Dept.) (appeal dismissed on 6/10/04); *Chavis v. New York*,

UID 2001-013-019, Claim No. 100419 (N.Y. Ct. Cl.) (dismissed on 9/19/01).

Generally, information about a plaintiff's litigation history is material in prisoner civil

rights actions since it enables the Court to determine one or more of the following issues: (1)

whether any of the issues in the action have been previously litigated and decided (for purposes

of the doctrines of res judicata and collateral estoppel); (2) whether the plaintiff had, prior to

being granted *in forma pauperis status* in this action, earned "three strikes" for purposes of 28

U.S.C. § 1915(g); (3) whether the plaintiff had a record of frivolous litigation sufficient to

warrant either (a) what is known as a "bar order" (i.e., an order barring him from litigating further

in that court without meeting certain preconditions) pursuant to 28 U.S.C. § 1651(a), or (b) an

order declaring plaintiff to be a "vexatious" litigator pursuant to 28 U.S.C. § 1927; and (4)

whether the plaintiff's litigation experience was so extraordinary that it effectively dispenses with

the need to afford him special solicitude.

Here, the information omitted by Plaintiff was certainly material since the action

proceeded for well over a year on the assumption that Plaintiff was telling the truth when he

swore that, as of the dates on which he filed his Complaint and Amended Complaint, he had filed

only one other lawsuit in state or federal court otherwise relating to his imprisonment.  Had

Plaintiff answered truthfully, it is highly likely that either the Court, or defense counsel, would

have more promptly explored Plaintiff's prior litigation history and discovered the above-

described "strikes."  I note that, while a plaintiff is under no duty to provide this information in

order to state an actionable civil rights claim, here, Plaintiff *chose* to answer a question on a form

complaint calling for such information, and *swore* to the truthfulness of his answer.  No amount

of special solicitude can excuse such a material a misrepresentation to the Court.[12]

District judges from this Court have recently indicated a willingness to sanction *pro se*

litigants for making such material misrepresentations.  *See, e.g., Standley v. Dennison*, 05-CV-

1033, 2007 WL 2406909, at *13-14 (N.D.N.Y. Aug. 21, 2007) (Sharpe, J., adopting, on *de novo*

review, Report-Recommendation by Lowe, M.J., premised on alternative ground that the plaintiff

should be sanctioned for making a material misrepresentation to the Court in his complaint);

*Muniz v. Goord*, 04-CV-0479, 2007 WL 2027912, at *6 & n.32 (N.D.N.Y. July 11, 2007)

(McAcoy, J., adopting, on plain-error review, Report-Recommendation by Lowe, M.J., premised

on alternative ground that the plaintiff should be sanctioned for making a material

misrepresentation to the Court in his complaint) [collecting cases].

Certainly, numerous other federal courts have so sanctioned *pro se* litigants.  *See, e.g.,*

*Greer v. Schriro*, No. 06-15537, 2007 WL 4163413, at *1 (9th Cir. Nov. 26, 2007) (affirming

---

[12]   I note that I am doubtful that Plaintiff is even entitled to such special solicitude, since the rationale for extending such solicitude is a *pro se* litigant's inexperience, and, here, Plaintiff is no stranger to the court system.  *See Davidson v. Flynn*, 32 F.3d 27, 31 (2d Cir. 1994) (declining to extend special solicitude to experienced *pro se* civil rights litigant); *see also Johnson v. Eggersdorf*, 8 F. App'x 140, 143 (2d Cir. 2001) (unpublished opinion), *aff'g*, 97-CV-0938, Decision and Order (N.D.N.Y. filed May 28, 1999) (Kahn, J.), *adopting*, Report-Recommendation, at 1, n.1 (N.D.N.Y. filed Apr. 28, 1999) (Smith, M.J.); *Johnson v. C. Gummerson*, 201 F.3d 431, at *2 (2d Cir. 1999) (unpublished opinion), *aff'g*, 97-CV-1727, Decision and Order (N.D.N.Y. filed June 11, 1999) (McAvoy, J.), *adopting*, Report-Recommendation (N.D.N.Y. filed April 28, 1999) (Smith, M.J.).  Specifically, from my review of various on-line databases, including the Federal Judiciary's PACER Service, it appears that Plaintiff has filed at least 15 other federal court actions, most of which were followed by an appeal, and at least six state court actions or appeals.  *See, supra*, Part II of this Report-Recommendation (listing cases); *see also Chavis v. Ryan*, 05-CV-0100 (N.D.N.Y.); *Chavis v. Goord*, No. 500537, 2007 WL 4335538 (N.Y. App. Div., 3d Dept.); *Chavis v. Goord*, 845 N.Y.S.2d 866 (N.Y. App. Div., 3d Dept.); *Chavis v. Goord*, 841 N.Y.S.2d 720 (N.Y. App. Div., 3d Dept.).

district court dismissal that was based on this ground); *Mathis v. Smith*, No. 05-13124, 181 Fed.

App'x 808, 809-10 (11th Cir. May 17, 2006) (affirming district court dismissal that was based

partially on this ground); *Hudson v. Fuller*, No. 02-1396, 59 Fed. App'x 855, 856-57 (7th Cir.

Feb. 25, 2003) (affirming district court dismissal that was based on this ground); *Albright v.*

*Holden,* , 99 F.3d 1145, 1145 (9th Cir. 1996) (affirming district court dismissal that was based on

this ground).[13]

     I note that I have carefully considered all less drastic sanctions and found them to be

inadequate and inappropriate remedies, given the particular circumstances of this case, and

Plaintiff's incorrigible propensity for abusing the litigation process.[14]  As a result, I recommend

that, in the alternative, Plaintiff's Amended Complaint should be dismissed with prejudice as a

sanction under Fed. R. Civ. P. 11 for making a material misrepresentation to the Court, in both

his sworn Complaint and his sworn Amended Complaint, about his previous litigation history.

---

   [13]     *See also Hood v. Tompkins*, No. 05-16358, 197 Fed. App'x 818, 819 (11th Cir.
Aug. 7, 2006) (affirming district court dismissal on this ground), *accord*, *Dinkins v. Smalley*, 07-
CV-0043, 2008 WL 160699, at *3 & n.3 (S.D. Ga. Jan. 14, 2008) (adopting, on *de novo* review,
magistrate judge's recommendation that plaintiff's complaint should be dismissed on this ground)
[citing cases].  I note that the dismissals in *Hood v. Tompkins* and *Dinkins v. Smalley* were
without prejudice since the plaintiffs in those cases had not yet had an opportunity to file an
amended complaint.  However, here, Plaintiff has had such an opportunity.  (*See* Dkt. No. 6.)  As
a result, the dismissal should be *with prejudice*.

   [14]     For example, in addition to the numerous baseless actions that Plaintiff has filed
in federal court, and the numerous misrepresentations he has made in those actions about his
then-previous litigation history, I note that Plaintiff has, in this action, used abusive language,
calling various Defendants "devils" and "satanic," and calling defense counsel "sneaky, wicked,
[and] manipulative." (*See, e.g.*, Dkt. No. 6, ¶ 6 at 1, 16 [Plf.'s Am. Compl.]; Dkt. No. 33, at 15
[Plf.'s Opp. Mem. of Law].)

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion to dismiss (Dkt. No. 31) be **GRANTED**, that Plaintiff's *in forma pauperis* status be revoked or rescinded as having been improvidently granted, and that Plaintiff be given **TEN (10) DAYS** from the date of the Court's final order with regard to Defendants' motion by which to pay the Court's filing fee of $250 (the fee applicable at the time of filing), upon penalty of **DISMISSAL**; and it is further

**RECOMMENDED** that, in the alternative, Plaintiff's Complaint be *sua sponte* **DISMISSED** **with prejudice** as a sanction pursuant to Fed. R. Civ. P. 11 for making a material misrepresentation to the Court in his sworn pleadings about his prior litigation history; and it is further

**RECOMMENDED** that the Court certify in writing, for purposes of 28 U.S.C. § 1915(a)(3), that any appeal taken from the Court's final judgment in this action would not be taken in good faith.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 [2d Cir. 1989]); 28 U.S.C. § 636(b); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: January 28, 2008
    Syracuse, New York

*George H. Lowe*
George H. Lowe
United States Magistrate Judge

# Exhibit 1

CLOSED

# U.S. District Court
# United States District Court for the Southern District of New York (Foley Square)
# CIVIL DOCKET FOR CASE #: 1:99-cv-05072-TPG

Chavis v. Charnes, et al
Assigned to: Judge Thomas P. Griesa
Demand: $0
Cause: 42:1983 Prisoner Civil Rights

Date Filed: 07/14/1999
Date Terminated: 07/14/1999
Jury Demand: Plaintiff
Nature of Suit: 550 Prisoner: Civil Rights
Jurisdiction: Federal Question

**Plaintiff**

**George M. Chavis**

represented by **George M. Chavis**
(91-A-3261)
Southport Correctional Facility
P.O. Box 2000
Pine City, NY 14871-2000
PRO SE

V.

**Defendant**

**Mr. Allen Charnes**

**Defendant**

**Ms. Irene Springer**

| Date Filed | # | Docket Text |
|---|---|---|
| 07/14/1999 | 1 | DECLARATION IN SUPPORT OF REQUEST TO PROCEED IN FORMA PAUPERIS by George M. Chavis (jp) (Entered: 07/19/1999) |
| 07/14/1999 | 2 | COMPLAINT filed (jp) (Entered: 07/19/1999) |
| 07/14/1999 | | Magistrate Judge Dolinger is so Designated. (jp) (Entered: 07/19/1999) |
| 07/14/1999 | 3 | ORDER OF DISMISSAL Accordingly, the complaint, filed in forma pauperis under 28 U.S.C. 1915(a), is dismissed pursuant to 28 U.S.C. 1915(d). We certify pursuant to 28 U.S.C. 1915(a) that any appeal from this order would not be taken in good faith. SO ORDERED. ( signed by Chief Judge Thomas P. Griesa ) (jp) (Entered: 07/19/1999) |
| 07/14/1999 | 4 | JUDGMENT for Allen Charnes, Irene Springer . Ordered, Adjudged and Decreed: That the complaint be and it is hereby dismissed. 28 U.S.C. |

| | | |
|---|---|---|
| | | 1915 (d). We certify that any appeal from the Court's order would not be taken in good faith. SO ORDERED. ( signed by Chief Judge Thomas P. Griesa ). entered on 7/19/99. (jp) (Entered: 07/19/1999) |
| 07/14/1999 | | Case closed (jp) (Entered: 07/19/1999) |
| 08/12/1999 | 5 | NOTICE OF APPEAL by George M. Chavis ; from [4-1] judgment . Copies of notice of appeal mailed to Attorney(s) of Record: .FEES DUE, IFP revoked 7/14/99. (as) (Entered: 09/02/1999) |
| 08/12/1999 | | Notice of appeal and certified copy of docket to USCA: [5-1] appeal by George M. Chavis ; Copy of notice of appeal sent to District Judge. (as) (Entered: 09/02/1999) |
| 09/08/1999 | 6 | Notice that the record on appeal has been certified and transmitted to the U.S. Court of Appeals: [5-1] appeal by George M. Chavis (as) (Entered: 09/08/1999) |
| 03/01/2000 | 7 | MANDATE OF USCA (certified copy) Re: Dismiss [5-1] appeal by George M. Chavis. Motions having been made by appellant pro se for in forma pauperis status and for damages, upon consideration it is ordered that said motions be and hereby are denied, and the appeal is dismissed as frivolous. 99-0265 Roseann B. MacKechnie, Clerk (sl) (Entered: 03/02/2000) |
| 05/11/2000 | | Record on appeal files (99-265) returned from U.S. Court of Appeals: [5-1] appeal by George M. Chavis. (dt) (Entered: 05/11/2000) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 01/17/2008 11:48:19 | | |
| **PACER Login:** | us4417 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:99-cv-05072-TPG |
| **Billable Pages:** | 1 | **Cost:** | 0.08 |

# **Exhibit 2**

```
                                          INDIV   PROSE
                                          SUBMTD DISPSD
                                          PNL      4 N
```

```
                    GENERAL DOCKET FOR
                Second Circuit Court of Appeals

Court of Appeals Docket #: 99-265                    Filed: 9/14/99
Nsuit: 3550  PRISONER PET-Civil Rights
Chavis v. Charnes, et al
Appeal from: U.S. District Court        SDNY

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
Case type information:
     1) Prisoner Petition
     2) State
     3) Civil Rights
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
Lower court information:

     District: 0208-01: 99-cv-5072
     Trial Judge: Thomas P. Griesa, Chief Judge
     Date Filed: 7/14/99
     Date order/judgment: 7/14/99
     Date NOA filed: 8/12/99
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
Fee status: IFP denied in CA

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
Prior cases:
    None
Current cases:
    None
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
Panel Assignment:

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
```

```
                                           INDIV   PROSE
                                           SUBMTD  DISPSD
                                           PNL      4  N
Proceedings include all events.
99-265   Chavis v. Charnes, et al

GEORGE M. CHAVIS              George M. Chavis
     Plaintiff - Appellant    #91-A-3261
                              [COR LD NTC]
                              Coxsackie Correctional Facility
                              P.O. Box 2000
                              Coxsackie, NY 12051


------------------------------

ALLEN CHARNES, Mr.           #990265, Esq.
     Defendant - Appellee    [COR LD NTC ret]
                             Attorney General's Office
                             State of New York
                             The Capitol
                             Albany, NY 12224

IRENE SPRINGER, Ms.          #990265, Esq.
     Defendant - Appellee    (See above)
                             [COR LD NTC ret]
```

Docket as of June 27, 2001 1:30 am                    Page 2

                                             INDIV   PROSE
                                             SUBMTD DISPSD
                                             PNL      4 N

Proceedings include all events.
99-265   Chavis v. Charnes, et al

Official Caption 1/
-------------------
Docket No. [s] : 99-0265

GEORGE M. CHAVIS,

                Plaintiff - Appellant,

v.

MR. ALLEN CHARNES and
MS. IRENE SPRINGER,

                Defendants - Appellees.

-------------------

Authorized Abbreviated Caption 2/
-------------------
Docket No. [s] : 99-0265

CHAVIS v. CHARNES
-------------------

---------------------------------------------
1/ Fed. R. App. P. Rule 12 [a] and 32 [a].
2/ For use on correspondence and motions only.

Docket as of June 27, 2001 1:30 am               Page 3


                                          INDIV  PROSE
                                          SUBMTD DISPSD
                                          PNL      4 N

Proceedings include all events.
99-265   Chavis v. Charnes, et al

8/31/99         Copy of district court order RECEIVED. (ag44)

9/14/99         Copy of notice of appeal and district court docket entries
                on behalf of Appellant George M. Chavis filed. (COANRQ
                state - cvrgt ;fee due  ) [99-265] (ag44)

9/14/99         Record on appeal filed. (Original papers of district
                court.) Number of volumes: 1 (ag44)

9/17/99          Note: This appeal was PRO SE when filed. (ag44)

9/17/99         Letter sent to Appellant George M. Chavis giving 30 days
                from date to either pay the fee or file a motion for ifp.
                Fee due on 10/18/99. □ Response due financial affidavit on
                10/18/99. (ag44)

9/20/99         Appellant George M. Chavis motion to proceed in forma
                pauperis Satisfy fee or motion for ifp.  FILED (w/pfs).
                [1555668-1] (ag44)

10/6/99         Letter from appellant, regarding submission of pre-argument
                materials, received. (ag44)

10/12/99        Letter sent to Appellant George M. Chavis instructing him
                to forward his prisoner fee letter to this court as soon as
                possible. (ag44)

10/18/99        Appellant George M. Chavis motion to allow damages  FILED
                (w/pfs). [1490706-1] (ag40)

11/24/99        Letter from apellant, regarding the status of his appeal,
                received. (ag44)

1/4/00          Letter sent to Appellant George M. Chavis informing him of
                the status of his appeal. (ag44)

2/25/00         Order FILED DENYING motion to allow [1490706-1] by
                Appellant George M. Chavis, endorsed on motion dated

10/18/99. , DENYING motion to proceed in forma pauperis
[1555668-1] by Appellant George M. Chavis, endorsed on
motion dated 9/20/99.  Order states, "Motions having been
made by appellant pro se for in forma pauperis status and
for damages, upon due consideration it is ordered that said
motions be and hereby are denied, and the appeal is
dismissed as frivolous.  See 28 U.S.C. S.1915 (e); Neitzke
v. Williams, 490 U.S. 319, 325 (1989).  For the Court: LC."
(ag44)

2/25/00        Notice, regarding motion order dated 2/25/00, issued to
               counsel. (ag44)

2/25/00        Certified copy of order dated 2/25/00 disposing of the
               appeal issued to district court. (ag44)


Docket as of June 27, 2001 1:30 am          Page 4




                                          INDIV   PROSE
                                          SUBMTD  DISPSD
                                          PNL        4 N
Proceedings include all events.
99-265   Chavis v. Charnes, et al

3/9/00         Letter from appellant, regarding reinstatement of the
               appeal, received. (ag44)

3/16/00        Letter sent to Appellant George M. Chavis stating that if
               he wants to reinstate the appeal, he must file a motion.
               (ag44)

3/31/00        Appellant George M. Chavis motion  for: 2.5 million dollars
               RECEIVED. (ag44)

5/1/00         Record on appeal RETURNED to lower court.  No. of volumes:
               1 (ref)

5/25/00        Letter from appellant, regarding motion for appointment of
               counsel and review of medical papers, received. (ag44)

6/22/00        Appellant George M. Chavis motion to reconsider decision
               FILED (w/pfs). [1652956-1] (hh)

7/18/00        Appellant George M. Chavis papers supporting motion # for
               reconsideration [1652956-1] by Appellant George M. Chavis
               filed. (ag44)

8/2/00         Order FILED DENYING motion to reconsider decision
               [1652956-1] by Appellant George M. Chavis, endorsed on
               motion dated 6/22/00.  Order states, "Before CJS, SS, DN
               Hurd, It is hereby ordered that the motion for
               reconsideration be and it hereby is denied.  For the Court:
               BJM" (ag44)

8/3/00         Notice, regarding motion order dated 8/2/00, issued to
               counsel. (ag44)

| | |
|---|---|
| 8/18/00 | Appellant George M. Chavis motion to reconsider decision FILED (w/pfs). [1691931-1] (hh) |
| 10/6/00 | Letter received from G. Chavis re: appeal to the Supreme Court. (ag42) |
| 11/9/00 | Letter from appellant, regarding denial of his motion for reconsideration, received. (ag44) |
| 12/8/00 | Letter sent to Appellant George M. Chavis re: Letter received on 10/06/00. (ag42) |
| 6/25/01 | Order FILED DENYING motion to reconsider decision [1691931-1] by Appellant George M. Chavis, endorsed on motion dated 8/18/00. (Before: CJS, SS, CJJ, Hurd, DJ)(BJM, AA FOR THE COURT) (ag40) |
| 6/25/01 | Notice of motion to denying reconsideration issued to counsel and pro se. (ag40) |

Docket as of June 27, 2001 1:30 am                    Page 5


                                              INDIV   PROSE
                                              SUBMTD  DISPSD
                                              PNL     4 N
Proceedings include all events.
99-265   Chavis v. Charnes, et al

| | |
|---|---|
| 6/25/01 | Letter sent to Appellant George M. Chavis: reagrding letter he sent to this court. (ag40) |

Docket as of June 27, 2001 1:30 am                    Page 6

# **<u>Exhibit 3</u>**

W.D.N.Y. (Buffalo)
00-CV-97
Schroeder, M.J.

# United States Court of Appeals
### FOR THE
### SECOND CIRCUIT

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, at Foley Square, in the City of New York, on the  *11th*  Day of *MARCH*  Two thousand and five.

Present:

Hon. Thomas J. Meskill,
Hon. Dennis Jacobs,
Hon. Chester J. Straub,
*Circuit Judges.*

UNITED STATES COURT OF APPEALS
FILED
MAR 11 2005
Roseann B. MacKechnie, Clerk
SECOND CIRCUIT

---

George M. Chavis,

Plaintiff-Appellant,

v.                                                                04-2814-pr

Robert Cunningham, George Struebel,

Defendants-Appellees,

D. Waiter, T. Brekon, Wright, John Doe,
Glenn S. Goord, Anthony J. Annuci, Walter R. Kelly,
Frank McCray, James Conway, Edward Donnerly,
Defendants.

---

Appellant, *pro se*, moves for *in forma pauperis* status. Upon due consideration, it is ORDERED that the motion is DENIED, and the appeal is dismissed, because the appeal "lacks an arguable basis in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *see also* 28 U.S.C. § 1915(e)(2)(B)(i).

A TRUE COPY
ROSEANN B. MacKECHNIE, CLERK

FOR THE COURT:
Roseann B. MacKechnie, Clerk

By: *Lucille Carr*

USCA Order 3/me    MAR 11 2005

Issued as Mandate:    MAY 12 2005,

# **Exhibit 4**

**New York State Court of Claims**



collection
home

Search [        ]  [search]

## CHAVIS v. THE STATE OF NEW YORK, #2001-013-019, Claim No. 100419, Motion No. M-63721

### Synopsis

A claim brought by a non-attorney which asserts a cause of action on behalf of family members is dismissed as improperly brought.

### Case Information

| | |
|---|---|
| **UID:** | 2001-013-019 |
| **Claimant(s):** | GEORGE CHAVIS |
| **Claimant short name:** | CHAVIS |
| **Footnote (claimant name) :** | |
| **Defendant(s):** | THE STATE OF NEW YORK |
| **Footnote (defendant name) :** | |
| **Third-party claimant (s):** | |
| **Third-party defendant(s):** | |
| **Claim number(s):** | 100419 |
| **Motion number(s):** | M-63721 |
| **Cross-motion number(s):** | |
| **Judge:** | Philip J. Patti |
| **Claimant's attorney:** | GEORGE CHAVIS, Pro Se |
| **Defendant's attorney:** | HON. ELIOT SPITZER Attorney General of the State of New York BY: William D. Lonergan, Esq.Assistant Attorney General |
| **Third-party defendant's attorney:** | |
| **Signature date:** | September 19, 2001 |

| | |
|---|---|
| **City:** | Rochester |
| **Comments:** | |
| **Official citation:** | |
| **Appellate results:** | |
| **See also** | |
| **(multicaptioned case)** | |

### Decision

On August 15, 2001, the following papers were read on Defendant's motion for an order of dismissal:
1. Notice of Motion and Supporting Affidavit of William D. Lonergan, Esq. ("Lonergan Affidavit")

2. Affidavit in Opposition: None Received

3. Filed Papers: Claim; Answer

The substantive portion of this claim, which was filed by *pro se* Claimant George Chavis, reads as follows:

On date of 8-22-98, my mother and brothers (2), had visited me at Lakeview Prison, at an "unauthorized" time, due to false information given them over the phone by my vindictive SHU-Counselor, on 8-11-98, resulting in loss of travel expenses by my family members.

Claimant served a Notice of Intention on September 11, 1998 (Lonergan Affidavit, Exhibit A), and the Claim was filed and served in May 1999. In its answer, the State raised the following as its fifth affirmative defense:

The claim is inappropriately brought, as the Claimant is not authorized to practice law under the New York State Judiciary Law. As such, Claimant cannot bring an action on behalf of his family members.

Defendant now moves for an order dismiss the claim on this ground.

CPLR 321(a) provides that an adult party "may prosecute or defend a civil action in person or by attorney," and Judiciary Law §478 makes it unlawful for persons who have not been admitted to practice law to appear as or hold themselves out as attorneys. Claimant has made no submission in opposition to Defendant's motion and, because he expressly indicates that he has brought this action *"pro se,"* I have no option but to conclude that he has neither the authority to represent his family members in this matter nor a claim to assert on his own behalf.

Defendant's motion is granted, and Claim No. 100419 is dismissed.

September 19, 2001
Rochester, New York

HON. PHILIP J. PATTI
Judge of the Court of Claims